IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| SARA LUEBANO, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | No. MO:21-CV-233-DC |
| | § | |
| OFFICE DEPOT, LLC, | § | |
|    *Defendant*. | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

BEFORE THE COURT is Defendant Office Depot, LLC's ("Defendant") Motion to Dismiss Plaintiff Sara Luebano's ("Plaintiff") First Amended Complaint (Doc. 9) pursuant to Fed. R. Civ. P. 12(b)(6). After due consideration, Defendant's Motion to Dismiss shall be **GRANTED**.

### I.  BACKGROUND

This action arises from Plaintiff's employment as a Sales Manager with Defendant in Odessa, Texas. In her Amended Complaint, Plaintiff alleges that on August 31, 2019, she was supervising when an incident occurred outside the store involving an active shooter. (Doc. 9 ¶ 9). Plaintiff claims her superiors directed her to go outside the store to talk to police in the parking lot. (*Id*. ¶¶ 10–11). Plaintiff received conflicting information about whether the store should remain open. (*Id*. ¶¶ 12–15). In September 2019, Plaintiff filed a complaint regarding how her supervisors handled the shooting incident and Defendant assured Plaintiff an investigation into company policies would occur. (*Id*. ¶¶ 16–17).

On October 1, 2019, two supervisors presented Plaintiff with a Performance Improvement Process Memorandum ("PIP") containing inaccurate information such as her disciplinary history. (*Id*. ¶¶ 18–19). Plaintiff alleges that on October 2, 2019, her supervisors

1

spoke with her regarding several issues, including her failure to follow the company's bag check policy, her process for counting the store's laptop inventory, and how Plaintiff counted money in a safe. (*Id*. ¶¶ 20–23).

In June 2020, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") to have knee surgery. (*Id*. ¶ 25). Defendant approved this leave, which began in June 2020. (*Id*.). Plaintiff had knee surgery on June 19, 2020. (*Id*.). From June 2020 to December 2020, Plaintiff remained on FMLA leave and/or medical leave of absence with short-term disability benefits. In November 2020, Angelina O'Flaherty from Defendant's Associate Relations Department informed Plaintiff that her absence from work had caused undue hardship at the store and they needed to hire a replacement but Plaintiff would be considered to fill any open positions when she was ready to return. (*Id*. ¶ 32).

On December 15, 2020, Ms. O'Flaherty advised Plaintiff her approved leave of absence was exhausted as of that day and asked Plaintiff to complete paperwork regarding her ability to perform her job duties. (*Id*. ¶ 34). Plaintiff alleges she received notice from the company administering her 401K that her employment status changed on January 7, 2021, and Defendant confirmed her termination on January 12, 2021. (*Id*. ¶¶ 37–38). When Plaintiff's approved leave expired and Plaintiff failed to return to work or respond to inquiries regarding her status, Defendant terminated her employment. (*Id*. ¶¶ 25, 35–36). Plaintiff subsequently filed suit.

Plaintiff alleges Defendant interfered with her FMLA rights and Defendant retaliated against her for exercising her rights under the FMLA. Plaintiff claims Defendant violated the Americans with Disabilities Act ("ADA") and the Texas Labor Code by discriminating against her on the basis of a disability, failing to provide a reasonable accommodation for Plaintiff's limitations, and failing to engage in the interactive process in good faith. Plaintiff further asserts

spoke with her regarding several issues, including her failure to follow the company's bag check policy, her process for counting the store's laptop inventory, and how Plaintiff counted money in a safe. (*Id*. ¶¶ 20–23).

In June 2020, Plaintiff requested leave under the Family Medical Leave Act ("FMLA") to have knee surgery. (*Id*. ¶ 25). Defendant approved this leave, which began in June 2020. (*Id*.). Plaintiff had knee surgery on June 19, 2020. (*Id*.). From June 2020 to December 2020, Plaintiff remained on FMLA leave and/or medical leave of absence with short-term disability benefits. In November 2020, Angelina O'Flaherty from Defendant's Associate Relations Department informed Plaintiff that her absence from work had caused undue hardship at the store and they needed to hire a replacement but Plaintiff would be considered to fill any open positions when she was ready to return. (*Id*. ¶ 32).

On December 15, 2020, Ms. O'Flaherty advised Plaintiff her approved leave of absence was exhausted as of that day and asked Plaintiff to complete paperwork regarding her ability to perform her job duties. (*Id*. ¶ 34). Plaintiff alleges she received notice from the company administering her 401K that her employment status changed on January 7, 2021, and Defendant confirmed her termination on January 12, 2021. (*Id*. ¶¶ 37–38). When Plaintiff's approved leave expired and Plaintiff failed to return to work or respond to inquiries regarding her status, Defendant terminated her employment. (*Id*. ¶¶ 25, 35–36). Plaintiff subsequently filed suit.

Plaintiff alleges Defendant interfered with her FMLA rights and Defendant retaliated against her for exercising her rights under the FMLA. Plaintiff claims Defendant violated the Americans with Disabilities Act ("ADA") and the Texas Labor Code by discriminating against her on the basis of a disability, failing to provide a reasonable accommodation for Plaintiff's limitations, and failing to engage in the interactive process in good faith. Plaintiff further asserts

Defendant was negligent in hiring, supervising training and retaining its agents, managers, and supervisors who oversaw Plaintiff during her employment.

On April 21, 2022, Defendant filed its Motion to Dismiss. (Doc. 10). Plaintiff has failed to file a timely response. Accordingly, this matter is now ripe for disposition.

## II.   LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–58, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n. 8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986).

In assessing a motion to dismiss under Federal Rule 12(b)(6), the court's review is limited to the live complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the

documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

### III.    DISCUSSION

**A.    Exhaustion of Administrative Remedies**

Defendant argues that Plaintiff failed to timely file any disability discrimination claims with the Equal Employment Opportunity Commission ("EEOC") and she did not plead that she received a right to sue letter regarding these claims. According to Defendant, Plaintiff failed to exhaust her administrative remedies, which is a condition precedent to filing suit, and therefore, she fails to state a claim on which relief can be granted. Consequently, Defendant argues Plaintiff's disability discrimination claims should be dismissed for failure to exhaust administrative remedies.

To properly exhaust employment discrimination claims, a plaintiff "must file a timely charge with the EEOC and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). A charge of discrimination must be brought within 300 days of any alleged discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *see EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753 n. 3 (5th Cir. 2020) (per curiam) ("[T]he ADA incorporates Title VII's enforcement procedures."). Consequently, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

This exhaustion requirement exists to facilitate the EEOC's "investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws."

*Filer v. Donley,* 690 F.3d 643, 647 (5th Cir. 2012).  Administrative exhaustion provides an opportunity for voluntary compliance or non-judicial resolution of matters.  *Davis v. Fort Bend Cty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom*. *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843 (2019); *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006); *Bouaziz v. AZT Corp.*, No. 3:10-CV-0053-B, 2010 WL 2813403, at *1–2 (N.D. Tex. July 9, 2010) (unpublished).

Plaintiff submitted her Charge of Discrimination on October 19, 2021; thus, everything that allegedly occurred prior to December 23, 2020, is not properly exhausted.  Absent from Plaintiff's Amended Complaint is a statement that she received a right to sue letter from the EEOC or that she waited the statutorily required 180-day period with no final agency action before filing suit.  This is fatal to Plaintiff's disability discrimination claims because administrative remedies are not exhausted until a plaintiff receives a right to sue letter or 180 days pass without a final agency action.  *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).  The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiff's disability discrimination claims.  *Martin K. Eby Const. Co., Inc. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 n. 5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997)) ("[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies.").

**B.     Plaintiff Fails to State a Claim for FMLA Interference**

Plaintiff alleges Defendant unlawfully interfered with, restrained, or denied her rights under the FMLA.  (Doc. 9 at 12).  The FMLA entitles employees of covered employers up to twelve (12) weeks of unpaid leave for qualifying reasons, such as a serious health condition.  *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018).  To protect this right, the FMLA

prohibits employers from interfering with an employee's right to take leave. 29 U.S.C. § 2615(a)(1).  In order to establish a prima facie case of FMLA interference, an employee "must show: (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Plaintiff's FMLA interference claim fails because she has not alleged Defendant denied her any benefits to which she was entitled under the FMLA.  Plaintiff alleges that on June 10, 2020, she notified Defendant that she needed a leave of absence beginning on June 19, 2020. (Doc. 9 ¶ 25).  Plaintiff alleges that her FMLA leave was approved, that she began using her leave June 19, 2020, and that she received "a series of letters regarding her leave, changing or extending dates and advising as to the exhaustion of her FMLA status." (*Id.*).  Absent from Plaintiff's Complaint are any allegations that Defendant denied her request for FMLA leave, that Defendant failed to communicate with her regarding her FMLA leave, or that Defendant otherwise interfered with her protected FMLA leave.

In fact, Plaintiff pleads that she remained out of work and on leave until at least December 15, 2020. (*Id.* ¶¶ 35–36).  Thus, Plaintiff admits that her approved leave was greater than the 12-week maximum protected by the FMLA and she has not identified any benefits she was denied.  Plaintiff admits that she exhausted her FMLA leave before attempting to return to work and "if an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 763 (5th Cir. 2001).  Plaintiff has therefore failed to state a cognizable FMLA interference claim, and her FMLA interference claim shall be **DISMISSED**.

### C. Plaintiff Fails to State a Claim for FMLA Retaliation

Plaintiff alleges Defendant retaliated against her for taking FMLA leave. (Doc. 9 at 12). To establish a prima facie case of retaliation under the FMLA, the aggrieved employee must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse decision was made because she took leave to which she was entitled under the FMLA. *Leal v. BFT, Ltd. P'ship*, 423 F. App'x 476, 479 (5th Cir. 2011) (unpublished). This final element requires proof of a causal link. *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for terminating plaintiff. *Amedee v. Shell Chem., L.P.*, 954 F.3d 831, 835 (5th Cir. 2020). After the employer articulates the reason, the burden shifts back to the plaintiff to establish, by a preponderance of the evidence, that the articulated reason is a pretext for retaliation. *Id.*

Plaintiff has failed to plead facts to support her assertion that Defendant decided to terminate her employment because she took FMLA leave. Plaintiff alleges that she was on leave for approximately six months—from June 2020 to December 2020. Plaintiff's approved absence from work thus far exceeded the 12-week maximum leave protected by the FMLA; yet, Defendant did not terminate her employment and instead continued approving Plaintiff's leave and short-term disability benefits. Plaintiff's failure to return after her 12 weeks of FMLA leave is fatal to her retaliation claim because the FMLA allows an employer to deny an employee reinstatement if the employee's leave of absence exceeds the statutory 12-week entitlement. 29 U.S.C. § 2612(a)(1). Because Plaintiff has not adequately alleged a prima facie case, Plaintiff's FMLA retaliation claim shall be **DISMISSED**.

### D. State Law Claims

The Court's only basis for subject matter over the claims remaining in this lawsuit is under supplemental jurisdiction, 28 U.S.C. § 1367(c). Section 1367(c) provides federal district courts the discretion to exercise or decline supplemental jurisdiction after dismissing all claims over which the court has original jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009). The United States Court of Appeals for the Fifth Circuit has said that when all federal claims in a case have been disposed of before trial, the district court should use its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *Brim v. ExxonMobil Pipeline Co.,* 213 F. App'x 303, 305 (5th Cir. 2007) (unpublished). This is because in "case[s] in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Indus*., 972 F.2d 580, 586–87 (5th Cir. 1992) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, n. 7 (1988)).

Weighing these factors clearly indicates that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. First, judicial economy would be best served by declining to exercise jurisdiction because this case is still in the very early stages of litigation. The parties will not have to perform a significant amount of redundant or burdensome work if Plaintiff brings her negligence claims in a state court. Even if Defendant is required to file an additional motion, Defendant's position on why Plaintiff's negligence claim fails will likely remain the same. Therefore, while filing the same argument in a different court may present some inconvenience to Defendant, any inconvenience is negligible. Third, federalism and comity weigh in favor of declining jurisdiction. The issues remaining in this case involve questions of substantive Texas law. Accordingly, Plaintiff's state law negligence claims should

be decided by Texas state courts. Accordingly, this factor weighs in favor of declining to exercise supplemental jurisdiction. Thus, Plaintiff's state law claims shall be **DISMISSED WITHOUT PREJUDICE**.

### IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff's disability discrimination claims and state law claims are hereby **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that Plaintiff's FMLA claims for interference and retaliation are hereby **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

SIGNED this 26th day of May, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE